AUSA:   Danielle Asher          Telephone: (313) 226-9518
AO 91 (Rev. 11/11)  Criminal Complaint     Special Agent:     Kevin Rambus (ATF)     Telephone:  (313) 202-3400

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

United States of America
    v.

Jason Foley

Case No.

Case: 2:22−mj−30161
Assigned To : Unassigned
Assign. Date : 3/29/2022
Description: CMP USA v. SEALED
MATTER (SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 4, 2021 through October 22, 2021__ in the county of __Wayne and Macomb__ in the
__Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

*Kevin O. Rambus*
_____
*Complainant's signature*

Special Agent Kevin Rambus, ATF
_____
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

*Jonathan JC Grey*
_____
*Judge's signature*

Date: __March 29, 2022__

City and state: __Detroit, Michigan__

Hon. Jonathan J.C. Grey, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Kevin Rambus, being duly sworn, do hereby state the following:

## I.    INTRODUCTION

1.    I am a Special Agent, with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) United States Department of Justice, and have been so employed since September of 2018.  I am currently assigned to the Detroit Field Division.  I completed twenty-six weeks of training, which was comprised of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia.  I received extensive training on firearms identification, common scenarios involving firearms and narcotics trafficking, and identification and effects of controlled substances.  Additionally, I received training on undercover investigations related to firearms and narcotics trafficking, which included investigative techniques and common subject behavior.

2.    Prior to becoming a Special Agent with ATF, I was a Police Officer for Southfield Police Department and worked street investigations for two years.  Prior to working for Southfield Police

Department, I worked at the Detroit Police Department for eight years. There, I was a member of the Special Response Team where we conducted high-risk search warrants, dealt with barricaded gunman situations, and instructed various trainings to the entire Police Department.

3.     The statements contained in this affidavit are based, in part, on my review of written police reports by the Detroit Police Department. This affidavit also includes information provided to me by and/or through other law enforcement agents, investigators and individuals with knowledge of this matter, my investigation, and the review of documents.

4.     This affidavit does not include all the information known to law enforcement regarding this investigation. This affidavit only establishes probable cause that Jason Daniel FOLEY (B/M/DOB: XX/XX/1984) violated 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm.

2

## II.   PROBABLE CAUSE

**A.   August 4, 2021 Shooting in Detroit, Michigan**

5.   On August 4, 2021, Detroit Police Department (DPD) officers responded to XXXXX Ilene Street in Detroit, Michigan after an aggravated/felonious assault occurred.  When officers arrived on scene, they observed several bullet holes in the above address.  Officers identified seven victims, including C.L., L.L., D.L., and S.D.  No one was injured during the shooting, but evidence technicians recovered thirty-one shell casings of .223 caliber rounds.

6.   While on scene, officers spoke with the victims. C.L. told officers that she believes James FOLEY shot up her sister's house. C.L. stated that she has dated FOLEY for approximately four years. She explained that FOLEY was at XXXXX Ilene with his mother around 2:00 a.m., approximately one hour before the shooting.  C.L. and FOLEY got into a verbal altercation, and FOLEY smacked C.L. across her face. FOLEY's mother then pushed FOLEY out of the door and told him to leave. Before FOLEY left, he said, "I will light this bitch up." FOLEY then drove away in an old gold pickup truck.

7.      Officers also spoke to S.D., who stated that he saw two males walking northbound up Ilene Street with long guns. When officers asked for their names, S.D. said one was named "JAY" and would not give any more information. S.D. then got into his car, told officers, "You know what I'm about to do," and left the location.

8.      L.L., C.L.'s sister who lives at XXXXX Ilene Street, told officers that she has a Ring doorbell camera. Officers reviewed the Ring doorbell footage, which captured some of the shooting.  Based on the Ring doorbell footage, officers determined that the shooting started at 3:03 a.m. and saw S.D. run into view and yell, "Everybody get down," as he ran inside the house. Officers heard another voice in the distance say, "I will knock the dust off this bitch."  L.L. and D.L. identified the voice as James FOLEY, but officers could not clearly see the suspect's face in the video.

9.      Officers submitted the recovered .223 caliber casings to the Oakland County Forensic Science Lab for examination, and one of the casings was entered into the National Integrated Ballistic Identification Network (NIBIN).

10.    NIBIN is a national network, operated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), that allows for the capture and comparison of ballistic evidence to aid in solving violent crimes involving firearms.  NIBIN technology compares images of submitted ballistic evidence from shooting scenes and recovered firearms and produces a list of possible similar results.  NIBIN technicians then conduct a correlation review of these results, identifying NIBIN "leads" or potential links or associations from the same firearm. A NIBIN lead is an unconfirmed, potential association between two or more pieces of firearm ballistic evidence and is based on a correlation review of the digital images in the NIBIN database.  When needed for court or other purposes, a firearms examiner will conduct a microscopic examination of the actual physical evidence to confirm a NIBIN lead as a "hit."  A NIBIN hit occurs when two or more firearms ballistic evidence acquisitions are identified as a confirmed match by a firearms examiner—that is, when the examiner determines that particular casings were fired from the same firearm, or a particular casing was fired from a particular firearm.

11.    The results from the Oakland County Forensic Science Lab showed that the above .223 casings that were recovered from the August 4, 2021 shooting in Detroit are identified as having been fired from the same firearm as test fire casings from the Diamondback DB-15 rifle (serial number DB2417336) that was seized from FOLEY's vehicle on October 22, 2021, discussed in further detail below.  In other words, the NIBIN lead was confirmed as a hit, or a match.

**B.    October 9, 2021 Shooting in Detroit, Michigan**

12.    On October 9, 2021, DPD officers arrived at XXXX Poe Street in Detroit, Michigan, at approximately 2:00 a.m., regarding a domestic violence assault and battery involving C.L. and FOLEY.

13.    C.L. told officers that she was inside the home when FOLEY entered through the front door. The front door was unsecured because FOLEY had previously broken it, so FOLEY pushed it open. While inside, FOLEY approached C.L., who was alone in the kitchen, and struck her two or three times in the head with a closed fist. C.L. pleaded with FOLEY, who then left the location in an unknown vehicle.  C.L. explained that she and FOLEY dated for approximately three years.

14.    Officers observed that C.L. had a swollen lip and was bleeding from the back of her head. C.L. requested an ambulance but when Medic 1 arrived, she refused treatment.  While completing the assault and battery report, officers stayed in the area to observe the location for approximately 45 minutes.

15.    At approximately 3:20 a.m., officers responded to the same address regarding a shooting. Officers arrived on scene and spoke to C.L., who stated that after officers left the location, she saw FOLEY firing shots in an unknown direction. C.L. told officers that, before the shooting, FOLEY called her cell phone, saying that he knew the police left and that he would return.

16.    No one was injured, and officers did not see bullet damage to any vehicles or buildings from the direction that FOLEY was firing. Officers canvassed the area for FOLEY with negative results. Evidence technicians recovered ten 9-millimeter spent shell casings on the sidewalk approximately 60 feet east of C.L.'s door.

17.    Officers submitted the recovered ten (10) 9-millimeter caliber casings to the Oakland County Forensic Science Lab for examination, and one of the casings was entered into NIBIN.

7

18.    The results from the Oakland County Forensic Science Lab showed that the 9-millimeter casings that were recovered from the October 9, 2021 shooting are identified as having been fired from the same firearm as test fire casings from the Smith & Wesson M&P 9 Shield handgun (serial number JFM8446) that was seized from FOLEY's vehicle on October 22, 2021, discussed in further detail below. In other words, the NIBIN lead was confirmed as a hit, or a match.

19.    FOLEY has a history of domestic violence including a 2014 misdemeanor domestic violence charge, a 2017 misdemeanor domestic violence – aggravated charge, and a 2018 misdemeanor domestic violence charge, all of which were dismissed. He was also acquitted of misdemeanor domestic violence in 2020, and has a 2016 misdemeanor domestic violence conviction.

**C.    October 22, 2021 Malicious Destruction of Property in Warren, Michigan**

20.    On October 22, 2021, Warren Police Department (WPD) officers responded to XXXX Westminister Avenue in Warren, Michigan, for a Malicious Destruction of Property incident that occurred by an unknown suspect. The victim, B.H., called the police and stated that she was inside the home with her boyfriend, R.F., when an unknown subject

8

shattered her front windows. Officers arrived at the home and spoke to B.H. and R.F., who both stated that they were not injured and refused medical attention. They also stated that they were the sole occupants in the home. Officers observed two shattered windows on the south side of the home. B.H. stated that, before calling 911, she and R.F. were watching television in the living room. At that time, an unknown suspect shattered the living room window with an unknown object. B.H. explained that R.F. was her boyfriend and he was staying the night. B.H. also stated that her son, Jason FOLEY, lived at the residence but he was not home at the time of the incident. B.H. and R.F. could not provide any suspect information as to who could have shattered the windows.  B.H. explained that she has a bad relationship with FOLEY's ex-girlfriend's "people," and they have threatened her in the past. B.H. could not provide FOLEY's ex-girlfriend's name or the names of any of her associates that made threats to B.H. She also stated that she was too shaken to fill out a witness statement.

21.    While at the home, an officer observed a single shell casing on the porch.  Evidence technicians responded to the scene and collected

a spent 9-milimeter shell casing from the porch and a tire jack from the living room.

22.   FOLEY arrived on scene approximately ten minutes after the officers. FOLEY was irate with officers over the incident. FOLEY stated that he was notified of the incident by B.H. via telephone and came home immediately. FOLEY told officers that he was spending the night with an unknown female before the incident.

23.   Additionally, while officers were driving on Westminster, L.S. waved down the officers and stated that there was a vehicle in his driveway, XXXX Westminster, that was not his. He explained that he wanted the vehicle removed from his driveway. Officers observed a 2007 silver Audi A4 (ELS6149) in L.S.'s driveway with a handgun in between the driver's seat and center console. Upon further investigation, the officers discovered that the handgun was a black 9-millimeter Smith and Wesson handgun, bearing serial number JFM8446, and containing one silver and black magazine.  Officers also observed a long gun on the floor of the front passenger side, a black Diamondback rifle, model number DB15, bearing serial number DB2417336. Both guns were in plain view inside of the vehicle. Officers conducted a Law Enforcement

Information Network (LEIN) query of the vehicle. LEIN showed that Jason FOLEY, of XXXX Westminster, owned the vehicle.   Officers collected the firearms inside the vehicle. FOLEY has no pistols registered to him and does not have a valid concealed pistol license per LEIN.

**D.    FOLEY's Criminal History and Analysis of the Seized Firearms**

24.    A computerized criminal history check was conducted for FOLEY. I also reviewed FOLEY's 2006 federal judgment. FOLEY has the following felony convictions:

a.    2002 – Felony Weapons-Carrying Concealed;

b.    2006 federal conviction in the Eastern District of Michigan for Felon in Possession of a Firearm, in violation 18 U.S.C. § 922(g)(1), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A), and Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(b)(1)(B); and

c.    2016 – Felony Motor Vehicle-Unlawful Driving Away and Felony Habitual Offender – Second Offense Notice.

11

25.    In 2005, FOLEY pled guilty to Felon in Possession of a Firearm, among other offenses. In his plea agreement, FOLEY admitted that, before he possessed the firearm, he had been convicted in a court of a crime punishable by imprisonment for more than one year (felony offense).

26.    On March 28, 2022, Special Agent Kevin Rambus reviewed the history of the above weapons and made a preliminary determination that the two firearms are firearms as defined under 18 U.S.C. § 921, and that they were manufactured outside the state of Michigan, and therefore, had traveled through interstate and/or foreign commerce.

27.    Detroit, Michigan and Warren, Michigan are in the Eastern District of Michigan.

### III.    CONCLUSION

28.    Based on the above information, probable cause exists to believe Jason Daniel FOLEY, knowing that he was previously convicted of a felony, was in possession of the above-described firearms, in violation of Title 18 U.S.C. § 922(g)(1).

*Kevin O. Rambus*

Kevin Rambus
Special Agent, ATF

12

Sworn to and subscribed to me in my presence, or by reliable electronic means this 29th day of March, 2022

JONATHAN GREY
UNITED STATES MAGISTRATE JUDGE

13